IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CLINTON JUMP and ISABEL ARMIJO,
personally and as parents of D.J., a minor child,

      Plaintiffs,

vs.                                      Civ. No. 13-289 KG/KK

SPRINGER MUNICIPAL SCHOOLS;
FORRESTER ELEMENTARY SCHOOL;
DR. GREGG McMANN, Superintendent of
Schools; GARY DeSANTIS, Forrester Elementary
School Principal; and Special Education Teacher,
SHEA JESPERSEN; all Individually and in their
official capacity,

      Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

      This matter comes before the Court upon Defendants' Motion to Dismiss on the Basis of Qualified Immunity and Other Grounds (Motion to Dismiss), filed April 2, 2013.  (Doc. 5). Plaintiffs filed a response on May 2, 2013, and Defendants filed a reply on May 17, 2013. (Docs. 13 and 14).  Having reviewed the Motion to Dismiss, the accompanying briefs, and the Complaint (Doc. 1-2), the Court grants the Motion to Dismiss.

*A.  The Complaint*

      Plaintiffs Clinton Jump and Isabel Armijo (Parents) bring this civil rights case, personally, and on behalf of their minor child, D.J.  Plaintiffs allege that D.J. is a special education student who, in 2011, was enrolled at Forrester Elementary School in Springer, New Mexico.  (Doc. 1-2) at ¶ 10.  Plaintiffs claim that in February 2011 Defendant Shea Jespersen, a special education teacher at Forrester Elementary School, "scolded" and threatened D.J. when she found him in a classroom near computers, an area where D.J. was not supposed to be.  *Id.* at

¶ 12.  Plaintiffs contend that Defendant Jespersen grabbed D.J. by the neck to remove him from that area.  *Id.* at ¶ 13.  According to Plaintiffs, Defendant Jespersen's actions caused abrasions, bruises, and bleeding on D.J.'s neck.  *Id.* D.J. was treated for his injuries.  *Id.* at ¶ 16.

Plaintiffs allege that neither Defendants Jespersen; Dr. Gregg McMann, the superintendent of Springer Municipal Schools; nor Defendant Gary DeSantis, the Forrester Elementary School Principal, met with the Parents prior to Defendant Jespersen disciplining D.J. by grabbing his neck.  *Id*. at ¶ 18.  Plaintiffs further contend that the Parents cooperated with school officials, but that D.J. "has since been removed from the school's rolls…."  *Id.* at ¶¶ 15-16.  Plaintiffs allege that the Parents, thereafter, homeschooled D.J. without the assistance of any of Defendants.  *Id.* at ¶ 16.  In addition to suing Defendants Jespersen, McMann, and DeSantis, Plaintiffs are suing the Springer Municipal Schools and Forrester Elementary School.  *Id.* at ¶¶ 4-5.  Finally, Plaintiffs claim that they filed a "timely complaint with the United States Department of Education…."  *Id.* at ¶ 8.

In Count I, Plaintiffs bring 42 U.S.C. § 1983 claims against the individual Defendants, in both their individual and official capacities, as well as against Defendants Springer Municipal Schools and Forrester Elementary School.  *Id*. at ¶¶ 23-24.  Plaintiffs claim that Defendants violated Section 1983 by depriving D.J. of his constitutional rights to equal protection, due process, public education, and liberty.  *Id.* at ¶¶ 17, 23, and 24.  Plaintiffs' damages under Count I include damages for stigma.  *Id.* at ¶ 25(c).

In Count II, Plaintiffs allege that all Defendants violated the Individuals with Disabilities Education Act (IDEA) by violating the IDEA's procedures for disciplining disabled children.  In Counts III and IV, Plaintiffs bring state assault and battery claims against Defendant Jespersen,

individually.  Finally, in Count V, Plaintiffs bring a state claim against all Defendants for depriving D.J. of educational opportunities.[1]

Defendants now move to dismiss Counts I, III, IV, V, and a portion of Count II under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  The individual Defendants, in their individual capacities, also raise a qualified immunity defense with respect to Count I.  Defendants further move to dismiss Count II under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction.  Plaintiffs oppose the Motion to Dismiss.

*B.  Discussion*

    *1.  Rule 12(b)(6):  Counts I, III, IV, and V*

In ruling on a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pleaded allegations as true and must view them in the light most favorable to the plaintiff.  *See Zinermon v. Burch*, 494 U.S. 113, 118 (1990); *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984).  Rule 12(b)(6) requires that a complaint set forth the grounds of a plaintiff's entitlement to relief through more than labels, conclusions and a formulaic recitation of the elements of a cause of action.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts sufficient to state a plausible claim of relief.  *Id*. at 570.  A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*

---

[1] Plaintiffs misnumber the fifth Count as "Count VI."  The Court will refer to that Count as "Count V" to avoid confusion with the numbering of the Counts.

To avoid a Rule 12(b)(6) dismissal based on the defense of qualified immunity, a plaintiff "must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights, and that those rights were clearly established at the time.  This requires enough allegations to give the defendants notice of the theory under which their claim is made." *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008).  If a plaintiff fails to demonstrate that a defendant's conduct violated a constitutional right, then the Court need not reach the additional question of whether the law was clearly established.  *Butler v. Rio Rancho Pub. Schs. Bd. of Educ.*, 341 F.3d 1197, 1200 (10th Cir. 2003).

> a.  *Count I:  the Section 1983 Claims*
>
> > (1)  *Defendants Springer Municipal Schools and Forrester Elementary School*

Defendants correctly note that neither Defendant Springer Municipal Schools nor Defendant Forrester Elementary School is a proper party.  Instead, the proper party is the local school board.  *See* 1978 NMSA, § 22-5-4(E) (2012 Repl. Pamp.) (school board has power to sue and be sued).  The Court will, therefore, dismiss Plaintiffs' claims against Defendants Springer Municipal Schools and Forrester Elementary School with prejudice.

Even assuming that Plaintiffs intended to name the local school board as a defendant when they sued Springer Municipal Schools and Forrester Elementary School, Defendants argue that Plaintiffs, nonetheless, fail to state a Section 1983 claim against that entity.  It is well-settled that local governments may not be held liable under a *respondeat superior* theory in a Section 1983 case. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978).  Instead, plaintiffs seeking to impose Section 1983 liability on a local government must establish that an underlying constitutional violation occurred and that a custom or policy caused their injuries.  *Olsen v.*

*Layton Hills Mall*, 312 F.3d 1304, 1317-18 (10th Cir. 2002).  Plaintiffs, in this case, failed to make any allegations regarding a school custom or policy which caused injuries to either D.J. or to the Parents.  Consequently, if Plaintiffs intended to sue the local school board by naming Springer Municipal Schools or Forrester Elementary School as Defendants, Plaintiffs nevertheless failed to state a plausible Section 1983 claim against the school board.

*(2)  Section 1983 Claims Brought by the Parents, Personally*

The Parents bring the Section 1983 claims both personally and on behalf of D.J.  To the extent that the Parents, personally, bring the Section 1983 claims in Count I, they do not allege that Defendants deprived them of any constitutional rights.  *See West v. Atkins*, 487 U.S. 42, 48 (1988) (to state Section 1983 claim, plaintiff must allege deprivation of constitutional right).  Rather, Plaintiffs contend that Defendants deprived D.J. of constitutional rights.  Because the Parents have not alleged a deprivation of their own constitutional rights, they failed to state plausible personal Section 1983 claims.  Accordingly, the Court will dismiss with prejudice the Parents' personal Section 1983 claims based on the purported deprivation of D.J.'s constitutional rights.

*(3)  The Individual Defendants and the Official Capacity Claims*

Next, the Court will dismiss the Section 1983 official capacity claims brought against the individual Defendants.  Those claims duplicate Plaintiffs' claims against Defendants Springer Municipal Schools and Forrester Elementary School.  *See, e.g., Buck v. City of Albuquerque*, 549 F.3d 1269, 1275 (10th Cir. 2008) (noting district court decision to dismiss as redundant claims against police captain in his official capacity because plaintiffs asserted same claims against City of Albuquerque); *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (district court correct in dismissing Section 1983 claims against all municipal officers in official capacities

because allegations duplicated claims against governmental entities themselves).  Plaintiffs could subsequently sue the individual Defendants in their official capacities without suing the school board and producing duplicative claims.  Therefore, the Court will dismiss the Section 1983 official capacity claims without prejudice.

### (4)  The Individual Defendants, in their Individual Capacities, and Qualified Immunity

Defendants further argue that the individual Defendants, in their individual capacities, are entitled to qualified immunity for the Section 1983 claims because Plaintiffs' factual allegations do not demonstrate that the individual Defendants violated D.J.'s constitutional rights to (1) equal protection, (2) due process when the individual Defendants allegedly deprived D.J. of a public education, and (3) due process when the individual Defendants allegedly deprived D.J. of his liberty.

### (a)  Equal Protection Claim

"Generally, to state a claim under § 1983 for violation of the Equal Protection Clause, a plaintiff must show that he or she is a member of a class of individuals that is being treated differently from similarly situated individuals who are not in that class." *Arabalo v. City of Denver*, 2015 WL 5235740, at *14 (10th Cir.).  In this case, Plaintiffs make no allegations that the individual Defendants treated D.J. differently from similarly situated students.  Plaintiffs, therefore, have failed to state a plausible equal protection claim against the individual Defendants.

### (b)  Due Process Claim:  Right to Public Education

Plaintiffs do not specify in the Complaint whether they are bringing procedural due process or substantive due process claims.  Plaintiffs, however, appear to argue in their response that the individual Defendants deprived D.J. of his right to a public education when they failed to

provide procedural safeguards required by the IDEA.  (Doc. 13) at 3-4.  The Court construes this argument as a procedural due process claim.

"To determine whether a plaintiff was denied procedural due process, [the courts] engage in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable?  (2) Was the individual afforded an appropriate level of process?" *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998).  In this case, the parties do not dispute that "public school students have a protected property interest in public education…." *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1257 (10th Cir. 2008).  When a school official removes a student from "school for a lengthy period of time," the school official completely deprives the student of a public education.  *Id.* In that situation, procedural due process requires notice and some type of hearing prior to the student's removal from school.  *Id.*

Here, Plaintiffs allege that D.J. was disenrolled from Forrester Elementary School. Plaintiffs, however, do not specify who disenrolled D.J., the Parents or school officials.  If a school official disenrolled D.J., Plaintiffs fail to contend that they did not receive notice of the disenrollment or some kind of hearing before D.J.'s disenrollment.  Moreover, a general claim that school officials did not adhere to IDEA procedural safeguards does not amount to a procedural due process claim.  *Doe v. Bd. of Educ. of Elyria City Sch.*, 149 F.3d 1182, 1998 WL 344061 *5 (6th Cir.) ("generalized claim of deprivation [under IDEA] is insufficient to sustain a procedural due process claim, particularly since the IDEA allows states to implement their own procedural requirements in accordance with federal law."); *see also Barr-Rhoderick v. The Board of Edu. of Albuquerque Public Schools*, 2006 U.S. Dist. LEXIS 72526 *40 (D.N.M.) ("a violation of the procedural requirements of the IDEA or similar statutes does not necessarily

amount to a constitutional violation" of Fourteenth Amendment right to procedural due process).
Plaintiffs have, therefore, failed to state a plausible procedural due process claim against the
individual Defendants based on a deprivation of public education.

*(c)  Due Process Claims:  Liberty Interest*

Fourteenth Amendment liberty interests are implicated when "school authorities, acting
under color of state law, deliberately decide to punish a child for misconduct by restraining the
child and inflicting appreciable physical pain…." *Ingraham v. Wright*, 430 U.S. 651, 674
(1977).  However, procedural due process "does not require notice and a hearing prior to the
imposition of corporal punishment in the public schools, as that practice is authorized and
limited by the common law." *Id.* at 682.  Accordingly, Plaintiffs have not stated a plausible
procedural due process claim against the individual Defendants based on Defendant Jespersen's
alleged corporal punishment of D.J.

On the other hand, "[i]n school discipline cases, the substantive due process inquiry is
'whether the force applied caused injury so severe, was so disproportionate to the need
presented, and was so inspired by malice or sadism rather than a merely careless or unwise
excess of zeal that it amounted to a brutal and inhumane abuse of official power literally
shocking to the conscience.'" *Harris v. Robinson*, 273 F.3d 927, 930 (10th Cir. 2001) (quoting
*Garcia by Garcia v. Miera,* 817 F.2d 650, 655 (10th Cir.1987).  Although Plaintiffs claim in the
Complaint that Defendant Jespersen grabbed D.J. by the neck causing abrasions, bruising, and
bleeding, Plaintiffs failed to  allege any facts to show that D.J.'s injuries were so severe as to
amount to conscious shocking abuse.  For instance, even though Plaintiffs allege that D.J.
received treatment for his injuries, Plaintiffs do not describe who provided the treatment or the
extent of the treatment.  Additionally, Plaintiffs do not provide sufficient factual allegations for

the Court to determine whether Defendant Jespersen's actions were so disproportionate to the need to remove D.J. from the computer area to be conscious shocking.  Finally, Plaintiffs do not allege facts which indicate that Defendant Jespersen acted with malice or sadism.  Accordingly, Plaintiffs failed to state a plausible substantive due process claim against the individual Defendants based on a purported deprivation of D.J.'s liberty by inflicting corporal punishment.

Fourteenth Amendment liberty interests are also implicated when a school suspension harms a student's reputation.  *Goss v. Lopez,* 419 U.S. 565, 574 (1975).  As previously stated, procedural due process requires that school officials provide the student with notice and some kind of hearing prior to imposing a suspension from school.  *See id.* at 581  ("due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.").  Here, Plaintiffs do not specify that a school official disenrolled D.J. nor do they contend that D.J. did not receive notice and a hearing prior to the disenrollment.  Plaintiffs, therefore, failed to state a plausible procedural due process claim against the individual Defendants based on a deprivation of D.J.'s liberty interest in his reputation.

With respect to a substantive due process claim concerning D.J.'s reputation, the Court notes that Plaintiffs do not describe the stigma D.J. endured.  Without that information, the Court cannot determine whether the individual Defendants' actions were conscious shocking and in violation of D.J.'s right to substantive due process.  Consequently, Plaintiffs do not state a plausible substantive due process claim against the individual Defendants based on a deprivation of D.J.'s liberty interest in his reputation.  *See Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847, (1998) (when evaluating substantive due process claim, court must determine whether "the

9

behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." ).

In sum, Plaintiffs have not alleged sufficient facts to state a plausible claim that the individual Defendants violated D.J.'s constitutional rights. Hence, Defendants, in their individual capacities, are entitled to qualified immunity for the Section 1983 claims currently pled in the Complaint. Because the Court based that decision on Plaintiffs' deficient factual allegations, the Court will dismiss those Section 1983 individual capacity claims without prejudice. The Court concludes that Count I is subject to dismissal in its entirety under Rule 12(b)(6).

> b. Count III (Assualt), Count IV (Battery), and Count V (Wrongful Deprivation of Educational Opportunity)

Counts III, IV, and V are state tort claims subject to the New Mexico Tort Claims Act (NMTCA). The NMTCA grants immunity to state governmental entities and public employees for any tort when they act within the scope of their duties, unless the NMTCA provides a specific waiver. *See* NMSA 1978, § 41–4–4(A) (2013 Cum. Supp.). Thus, Plaintiffs' claims against Defendants must fit within one of the exceptions to the grant of immunity. *See* NMSA 1978, §§ 41–4–5 to 41-4–13 (1996 Repl. Pamp. and 2013 Cum. Supp.) (listing specific exceptions). Having reviewed those exceptions, the Court finds no applicable waiver or exception to immunity under the NMTCA for Plaintiffs' claims against Defendants. Accordingly, Counts III, IV, and V do not state plausible state tort claims and the Court will be dismiss those Counts with prejudice under Rule 12(b)(6). *See Pemberton v. Cordova,* 1987–NMCA–020, ¶ 6, 105 N.M. 476 ("If no specific waiver of immunity can be found in the Tort Claims Act, plaintiffs' complaint must be dismissed as to the governmental defendant."), *limited on other grounds by Callaway v. N.M. Dep't of Corrections,* 1994–NMCA–049, ¶ 17, 117 N.M. 637.

*2.  Rule 12(b)(6) and Rule 12(b)(1):  Count II (IDEA Claim)*

Defendants further argue that the IDEA claim brought against the individual Defendants in their individual capacities are subject to dismissal under Rule 12(b)(6).  In fact, this district court has held that individuals sued personally under the IDEA are not recipients of federally funding and, thus, cannot be liable under the IDEA.  *See N.T. v. Espanola Pub. Sch*., 2005 WL 5840479, at *9 (D.N.M.) ("Based on the authorities cited above, I conclude as a matter of law that neither Section 504 of the Rehabilitation Act nor the relevant provisions of the IDEA provide a basis for holding Defendant Martinez liable in her personal capacity under the circumstances alleged in this case because she is not a recipient of federal funds.").  That being the case, Plaintiffs failed to state a plausible IDEA claim against the individual Defendants in their individual capacities.  The Court will dismiss those claims with prejudice under Rule 12(b)(6).

Defendants also move under Rule 12(b)(1) to dismiss the IDEA claim for lack of subject matter jurisdiction because Plaintiffs fail to allege that they exhausted their administrative remedies under the IDEA.  Although the Tenth Circuit now questions whether exhaustion of administrative remedies under the IDEA is a jurisdictional matter, the Court is bound to follow existing law which provides that such exhaustion is a jurisdictional matter.  *See Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 783 (10th Cir. 2013).  Failure to exhaust administrative remedies under the IDEA is excused only if the relief a plaintiff seeks is not available under the IDEA, exhausting administrative remedies would be futile, or if an agency's policies or practices are contrary to the law.  *Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1276 (10th Cir.

2007).

The IDEA provides that state agencies or local educational agencies which receive assistance under the IDEA must establish and maintain procedures "to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies."  20 U.S.C. § 1415(a).  The IDEA describes the process for filing and processing complaints regarding any matter relating to the child's educational placement "or the provision of a free appropriate public education to such child."  *Id.* at §1415(b)(6).  If not resolved informally or through mediation, the complaint must be the subject of a due process hearing, and the hearing officer must issue a written decision.  *See id.* § 1415(f).  That decision is subject to appeal to the state educational agency, which must make an independent decision.  *Id.* § 1415(g).  A party may bring a civil action only after the state agency has issued its decision.  *Id.* § 1415(i)(2)(A).  In accordance with the IDEA, the State of New Mexico has established procedures for providing the IDEA's procedural safeguards, including procedures for filing and processing complaints, which are filed with the Special Education Bureau of the state public education department.  N.M. Admin. Code 6.31.2.13 (H) (2007).

Plaintiffs allege in the Complaint that they filed a complaint with the United States Department of Education and cooperated with school authorities.  Those alleged actions, however, do not establish that Plaintiffs exhausted administrative remedies as required under the state's IDEA procedures.  Moreover, Plaintiffs have not alleged any circumstances which would justify a failure to exhaust the state's IDEA administrative remedies.  For these reasons, the Court lacks subject matter jurisdiction over the IDEA claims against the individual Defendants in their official capacities and the Court will dismiss those claims without prejudice under Rule 12(b)(1).

IT IS ORDERED that Defendants' Motion to Dismiss on the Basis of Qualified Immunity and Other Grounds (Doc. 5) is granted and this case will be dismissed in its entirety as follows:

1.  the claims against Defendants Springer Municipal Schools and Forrester Elementary School will be dismissed with prejudice;

2.  the Count I claims brought by Plaintiffs Jump and Armijo, personally, will be dismissed with prejudice;

3.  the Count I claims brought on behalf of D.J., a minor child, against the individual Defendants, in their official and individual capacities, will be dismissed without prejudice;

4.  the Count II claims against the individual Defendants in their individual capacities will be dismissed with prejudice;

5. the Count II claims against the individual Defendants in their official capacities will be dismissed without prejudice; and

6.  Counts III, IV, and V will be dismissed with prejudice.

_____
UNITED STATES DISTRICT JUDGE